Document Number Case Number
06–C–0032–C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
02/16/2007 05:44:40 PM CST

# IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| COMPUTER DOCKING STATION CORPORATION,<br><br>                Plaintiff,<br><br>      vs.<br><br>DELL, INC.; FUJITSU COMPUTER SYSTEMS CORPORATON; GATEWAY, INC.; HEWLETT-PACKARD COMPANY; TOSHIBA AMERICA, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; INTERNATIONAL BUSINESS MACHINES CORPORATION, and LENOVO (UNITED STATES), INC.,<br><br>                Defendants. | CASE NO. 06 C 0032 C<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY FEES AND TO AMEND JUDGMENT** |

## I.   INTRODUCTION

By any measure, this case is not "exceptional," and Defendants have certainly not proved it so by clear and convincing evidence.  Defendants' assertion that Computer Docking Station Corporation's ("CDSC") pre-filing investigation was somehow inadequate is factually unsupported and wrong.  In fact, CDSC undertook an extensive prefiling investigation and, as Defendants well know, provided Defendants with detailed claim charts before the case was filed and engaged the Defendants in a substantive dialogue on the merits of CDSC's infringement claims against them.  Not once during those discussions did the Defendants raise the claim construction arguments upon which they ultimately prevailed.  Moreover, an objectively baseless, "exceptional" case does not result in the substantial settlement of patent claims with multiple, sophisticated Defendants as occurred in this case.  Defendants' motion for attorneys fees should be denied.

CDSC, not the Defendants, prevailed on the majority of claim construction issues decided by the Court.  The Court, however, did not accept CDSC's construction of the so-called "portable" and "all connections" limitations.  With respect to these terms, CDSC's proposed constructions were not arguably frivolous, they were close, legal questions, and the Court decided the hard fought debate over these terms under the less than clear law of disavowal based upon statements in the patent prosecution history.  As reflected in the Court's Markman Order, acceptance of Defendants' construction was far from a foregone conclusion and no bright line test applied to the application of the jurisprudence relating to disavowal.

By any measure, CDSC has litigated this case in good faith every step of the way.  Upon receipt of the Court's claim construction order, CDSC recognized that it could not prove infringement on the basis of the Court's construction of "portable."  At that time, because Defendants had not yet provided all of their promised discovery, CDSC could not determine if this Court's claim construction of the "all connections" limitation also precluded a finding of infringement.  Nevertheless, CDSC took immediate action to bring this matter to a conclusion.  Unable to reach an agreement with Defendants on a way forward to either dismiss the case or

provide limited discovery unilaterally withheld by Defendants relevant to the "all connections" limitation, CDSC requested that the Court enter judgment against itself acknowledging that it could not prove infringement under the Court's construction of "portable."

As this Court has stated, "[m]erely prevailing is not enough to show that a case is exceptional." *Ardisam, Inc. v. Ameristep, Inc.*, 2005 U.S. Dist. LEXIS 26865, at *3 (W.D. Wis. November 3, 2005) (Crabb, J.). "An award of attorney fees is neither usual nor customary in a patent case and never follows as a matter of course from the outcome of the case. *Id*. "The prevailing party bears the burden of establishing by clear and convincing evidence that the case is exceptional." *Id, citing Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1267 (Fed. Cir. 1995).

In the end, Defendants won and CDSC lost at the trial level. But losing a patent case based on close issues of claim construction does not equate with bad faith litigation. Defendants' motion ultimately rests on nothing but the fact that Defendants were granted summary judgment of non-infringement. That does not make this case "exceptional." Defendants' motion should be denied.[1]

## II.   FACTUAL BACKGROUND

What follows is a summary of this litigation from start to finish, demonstrating that at all times CDSC litigated this case in good faith. Because the Court is well familiar with CDSC's arguments on the merits of this case, CDSC will not revisit them here.

### A.   CDSC's Thorough Presuit Investigation

Upon acquiring U.S. Patent No. 5,187,645 ("the '645 patent") in April 2005, Acacia Patent Acquisition Corp., CDSC's parent company, began its investigation into the validity and

---

[1] CDSC filed a Notice of Appeal to the Federal Circuit on January 29, 2007. CDSC believes that Defendants' motion for attorneys' fees is unwarranted and respectfully requests that the Court deny the motion now. However, if this Court even considers Defendants' attorneys fees request to be a close question, it should exercise its discretion and stay the fees motion pending the outcome of appeal. *See e.g. Digital Privacy, Inc. v. RSA Sec., Inc.*, 199 F. Supp. 2d 457, 461 (E.D. Va. 2002).

infringement of the '645 patent.[2]  (DePirro Decl. ¶ 2; Butts Decl. ¶ 2).  Two of CDSC's engineers, Robert DePirro and Jeff Schoenwald, analyzed the '645 patent and began collecting information concerning several portable computers and their corresponding docking stations. (DePirro Decl. ¶¶ 2, 3).  Messrs. DePirro and Schoenwald searched the Internet, including Defendants' websites, to determine which computers had a plurality of ports – with particular attention to the ports mentioned in the '645 patent specification – that could be replicated through a compatible docking station.  (DePirro Decl. ¶ 3).  John Roop, another CDSC engineer, dismantled a Dell docking station and performed various electrical tests to confirm that contemporary docking stations simply passed signals from the docking station's connection with the computer to its peripheral device ports.  (DePirro Decl. ¶ 4).  Mr. DePirro conducted an in-depth prior art search, reviewing magazine articles, advertisements and other industry publications at the University of California Irvine's library.  (DePirro Decl. ¶ 5).  CDSC also engaged Robert Blackmon, a patent attorney, to search for prior art patents.  (DePirro Decl. ¶ 5). CDSC's outside litigation counsel, Hennigan Bennett & Dorman LLP ("HBD"), was consulted about the investigation.  (DePirro Decl. ¶ 6).  Specifically, Alan Block, a partner at HBD reviewed every aspect of CDSC's investigation, and investigated the validity and infringement of CDSC's patent himself.  (Block Decl. ¶¶ 2, 3).

Over several weeks, Messrs. Block, DePirro, and Schoenwald prepared infringement claim charts, and continued to revise and discuss those charts and the contentions they made. (DePirro Decl. ¶ 7; Butts Decl. ¶ 3).  CDSC then sent respective claim charts to each of the Defendants in this case, including the moving defendants, along with letters inviting them to license the '645 patent.  (Butts Decl. ¶ 4).  In response to those letters and claim charts, discussions ensued between CDSC and several of the defendants.[3]  (Butts Decl. ¶ 5).  For

---

[2] For ease of reference, CDSC's parent and affiliate companies are also referred to as CDSC herein.

[3] Despite repeated invitations, Gateway and Toshiba refused to meet with CDSC personnel or discuss the '645 patent.  (Butts Decl., ¶ 5)

example, Dell, Hewlett-Packard, and Sony each provided CDSC with alleged prior art which they contended would invalidate the '645 patent. (DePirro Decl. ¶ 8). CDSC explained to each of these companies why none of the alleged prior art references would invalidate the '645 patent. (DePirro Decl. ¶ 8). Much of these discussions took place in face-to-face meetings and over the phone rather than through written correspondence. (DePirro Decl. ¶ 9; Butts Decl. ¶ 5). For example, Dell and Hewlett-Packard personnel met personally with CDSC's attorney and engineer to discuss the '645 patent. (DePirro Decl. ¶ 9; Butts Decl. ¶ 5). During these meetings and telephone conversations, CDSC does not recall any defendant explaining reasons why they did not infringe the '645 patent, though at an in-person meeting between CDSC and Dell, Mr. DePirro did explain, at Dell's request, how a Dell computer "rests in" its docking station. (DePirro Decl. ¶ 10 ). Rather, each of the defendants focused on the issue of validity. One of the defendants, Sony, even communicated its view that CDSC's infringement case was compelling, and that their focus would be on invalidity. (DePirro Decl. ¶ 10). Notably, at these meetings and during these telephone conversations, CDSC does not recall any defendant contending that their products did not infringe because they did not meet the "portable computer" limitation or the "all connections" limitation. (DePirro Decl. ¶ 11; Butts Decl. ¶ 6). The "all connections" limitation was mentioned once by defendant Toshiba in a written correspondence; but invitations by CDSC to explain the reason for that contention were declined by Toshiba. (Butts Decl. ¶ 6).

Ultimately, Hewlett-Packard, IBM, Lenovo, Sony and Fujitsu licensed the '645 patent, while Dell, Gateway, and Toshiba chose to continue to litigate.

## B.    Claim Construction

In June and July 2006, counsel for CDSC and Defendants worked cooperatively to identify and narrow the parties' disputes regarding the proper construction of the claims of the '645 patent. The parties exchanged their respective, proposed claim constructions and evidence to support those constructions, discussed the issues, and agreed to certain constructions. Six claim construction issues remained disputed after the parties' discussions:

1.    whether the phrase "portable computer" excludes "laptop" computers;

-4-

2.    whether every claim, or just some, required that the computer be held vertically;

3.    whether the phrase "one of each of said subsets of pins" is indefinite;

4.    whether the "all connections" limitation requires that every individual connector on an accused computer be replicated through the "single connector," or just that an accused computer have a plurality of individual connectors that are replicated through the "single connector";

5.    what is required by the "same data link" limitation; and

6.    the function and structure of the "docking connection means."

The parties briefed these issues and argued each at the claim construction hearing on July 28, 2006. On August 16, 2006, the Court issued its claim construction order, ruling in favor of CDSC on issues # 2, 3, 5, and 6, and ruling in favor of Defendants on issues # 1 and 4.

## C.    Defendants' Termination of Discovery

Document production requests had been served by each party in March 2006. On August 1, 2006, the parties agreed to exchange their documents in electronic format on August 11, 2006. CDSC sent Defendants all of its responsive documents with the sole exception of two settlement agreements for which it was obligated to provide notice before any production, which were produced shortly after August 11. Defendants, however, produced only a small fraction of their responsive documents on August 11. Then, immediately upon receiving the Court's claim construction order, Defendants unilaterally terminated all discovery, refusing even to produce the documents which were promised to be produced on August 11. CDSC explained to the Defendants that while it could no longer assert infringement based on the Court's construction of "portable computer," it required the promised documents to evaluate and present its infringement case with respect to other claim limitations such as the "all connections" limitation. Nonetheless, Defendants refused to honor their promise.

## D.    CDSC's Attempts to Resolve the Case

Shortly after receiving the Court's claim construction order, CDSC informed Defendants that it could no longer assert infringement with regard to any of Defendants' products because

each had an attached keyboard or display, and the Court found that the claims of the '645 patent do not cover such computers. Defendants prepared a draft stipulated judgment and forwarded it to CDSC's counsel. However, Defendants' draft stipulated judgment included several items which Defendants were not entitled to, and CDSC could not agree to. Notably, Defendants demanded that CDSC stipulate that none of their computers met the "all connections" limitation, but refused to provide any documents to substantiate their contention. CDSC, therefore, drafted its own stipulated judgment and circulated it to Defendants' counsel.

Defendants refused to sign CDSC's draft stipulated judgment, or even discuss what changes to that draft they believed they were entitled to. Because in light of the Court's claim construction CDSC could no longer in good faith pursue an infringement action against Defendants, but could not agree with Defendants on the terms of a stipulated judgment, CDSC moved this Court for an entry of judgment against itself. Defendants opposed that motion, and filed a summary judgment motion shortly thereafter. Ultimately, this Court denied CDSC's motion for entry of judgment so that the parties could further "develop the factual record." (Order, October 11, 2006, Doc. No. 125, p. 2). Even after that motion was denied, Defendants refused to produce documents required to develop the record relating to the infringement of the "all connections limitation." Moreover, and ironically, Defendants are alternatively requesting fees incurred as a result of this Court's denial of CDSC's motion for entry of judgment and the Court's desire to further "develop the record."

### E.   Defendants' Motion for Summary Judgment and CDSC's Rule 56(f) Response

On September 26, 2006, Defendants filed their summary judgment motion and supporting declarations, arguing that their computers did not infringe the '645 patent based on the Court's construction of "portable computer" and the "all connections" limitation. Attached to their supporting declarations, Defendants submitted documents which had never before been provided to CDSC despite CDSC's discovery requests.

CDSC responded by filing a Rule 56(f) motion, requesting discovery regarding several

topics relevant to Defendants' motion, including "discovery about each of the devices and their respective connectors," and "feature specification documents, regarding, for example, the identity, capabilities , and operation of various ports, slots, and peripheral device connectors on the Defendants' computers and docking stations." (Rule 56(f) Motion, pp. 5, 7). CDSC was even more particular in detailing the discovery it needed, requesting among other things:

- Documents sufficient to identify the location of the following ports on each such computer and docking station: "PC card," "PCMCIA," "Express Card," and "Media Card."

- Documents sufficient to show the capabilities and operation of the following ports which are referenced by Defendants in their motion: "microphone," "TV," "headphone," "mic," "video out," "line input," and "line in/out" – specifically, the micro-architecture specifications related to these ports; and

- Documents sufficient to show the capabilities and operation of the following ports which are available on Defendants' docking stations: "line-in (audio)," "line-out (audio)," "PCI," "DVI," "video out," "line input," and "line in/out" – specifically, the micro-architecture specifications related to these ports.

(Reply in Support of Plaintiff's Rule 56(f) Request for Additional Discovery, p. 2; Doc. No. 132).

While its Rule 56(f) motion was pending, CDSC also filed a substantive opposition to Defendants' summary judgment motion, arguing that certain ports (specifically infrared ports and microphone ports) on Defendants' computers are not "computer-peripheral-device-specific connectors," and therefore, even under this Court's claim construction, those ports need not be replicated through a "single connector" in order to meet the "all connections" limitation. CDSC's opposition referenced its pending 56(f) motion and emphasized in its opposition that it did not have sufficient information as a result of Defendants' refusals to provide discovery to

completely respond to Defendants' motion.[4]  CDSC further argued that Defendants had not met their initial burden on summary judgment of establishing that other ports (specifically RJ-11 ports, PC card readers, …) are "computer-peripheral-device-specific connectors" and, therefore, their motion should be denied  (Response to Proposed Findings of Fact ¶ 73; Korf Decl. ¶¶ 5, 7-11).  In opposition to Defendants' summary judgment motion, CDSC submitted not only its opposition brief and Rule 56(f) response, but also its detailed response to Defendants' proposed findings of fact.  On a fact by fact basis, that response included the basis for the objection and, where appropriate, proposed a factual finding and citation to the record.

**III.   ARGUMENT**

> **A.   Principles Guiding the Exceptional Case Analysis**

Under 35 U.S.C. § 285, the "court in exceptional cases may award reasonable  attorney fees to the prevailing party."  The principles guiding the § 285 analysis strongly argue against a finding of exceptional case status here.

> **1.   Merely losing a patent infringement case is never enough to justify exceptional case status.**

The Federal Circuit has repeatedly emphasized that attorney fees "are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party 'for merely defending or prosecuting a lawsuit." *Revlon, Inc. Carson Prods. Co.*, 803 F.2d 676, 679 (Fed. Cir. 1986) (citation omitted); *also see Ardisam,* 2005 U.S. Dist. LEXIS 26865, at *3 (Crabb, J.). Thus, the mere fact that a plaintiff has lost its claim on the merits is not enough to support an award of attorneys' fees under § 285.  *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1580(Fed. Cir. 1993); *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998) (affirming denial of fees against patentee after summary judgment of noninfringement).

---

[4] *See* Memorandum in Opposition to Defendants' Motion for Summary Judgment, Doc. No. 127, p. 1, fn. 1.

As the plain language of § 285 indicates, an award of attorneys' fees under this provision "is neither usual nor customary in a patent case." *Ardisam,* 2005 U.S. Dist. LEXIS 26865, at *3 (Crabb, J.). Such an award is rare because courts are unwilling to thwart patent owners from asserting their legitimate patent rights in good faith. *Loctite Corp. v. Ultraseal, Ltd.,* 781 F.2d 861, 877 (Fed. Cir. 1985), *overruled on other grounds, Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059 (Fed. Cir. 1998). Likewise, courts are unwilling to discourage attorneys in patent cases from "that vigorous representation of clients which their Code of Professional Responsibility demands of them." *Morgan Adhesives Co. v. Chemtrol Adhesives, Inc.,* 574 F. Supp. 832, 836 (N.D. Ohio 1983), *aff'd,* 765 F.2d 158 (Fed. Cir. 1985); *Braun Inc. v. Dynamics Corp. of Am.,* 775 F. Supp. 33, 40 (D. Conn. 1991), *aff'd in part, rev'd in part,* 975 F.2d 815 (Fed. Cir. 1992) ("Litigation is an adversarial process, and [the unsuccessful party] should not be penalized simply for utilizing the available tools.").

> **2.      A finding that a patentee engaged in unfair conduct, bad faith litigation, or inequitable conduct is required for a case to be "exceptional."**

The Federal Circuit has construed § 285 to permit an award of attorneys' fees only "where it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." *Badalamenti v. Dunham's, Inc.,* 896 F.2d 1359, 1364 (Fed. Cir. 1990) (citation omitted); *Ardisam,* 2005 U.S. Dist. LEXIS 26865, at *3 (Crabb, J.). To achieve exceptional case status where, as here, the patent owner has lost its infringement claim, the court must make "some finding of bad faith, fraud, gross negligence, or unclean hands on the part of the unsuccessful patentee." *Ardisam,* 2005 U.S. Dist. LEXIS 26865, at *3 (Crabb, J.) (citation omitted).

A determination that a case is exceptional can be based only upon "clear and convincing evidence." *Ardisam,* 2005 U.S. Dist. LEXIS 26865, at *3 (Crabb, J.), *citing Imagineering, Inc. v. Van Klassens, Inc.,* 53 F.3d 1260, 1267 (Fed. Cir. 1995); *Reactive Metals & Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582 (Fed. Cir. 1985) ("The quantum of proof required to prove bad

faith conduct is clear and convincing evidence."). A party's "mere argument" that claims are "baseless" and pursued in "bad faith" does not satisfy this heavy burden. *Hoffmann-La Roche I v. Invamed Inc.*, 213 F.3d 1359, 1366 (Fed. Cir. 2000).

**B.    The Undisputed Evidence Shows That CDSC Litigated in Good Faith**

Defendants' cursory discussion of selected facts ignores the mountain of undisputed evidence showing that CDSC litigated this case in complete good faith:

**1.    CDSC's prefiling investigation and decision to file the lawsuit was reasonable.**

Courts will ordinarily find that a patent suit is frivolous only if the patentee conducted no investigation of the factual and legal merits of the claims or relied solely on lay opinion. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810-11 (Fed. Cir. 1990). Here, CDSC decided to sue Defendants only after conducting a painstaking factual and legal investigation. Specifically, CDSC took the following steps before filing the lawsuit: (1) Bob DePirro, an engineer at CDSC, led a group of CDSC engineers which conducted an analysis of the '645 patent and Defendants' products; (2) CDSC's in-house attorneys reviewed the merits of CDSC's legal and factual position; (3) CDSC hired outside counsel specializing in patent infringement litigation who evaluated whether Defendants infringed one or more claims of the '645 patent; (4) CDSC prepared infringement claim charts which it distributed to Defendants, and invited discussion concerning those claim charts; (5) CDSC met with or otherwise communicated with every Defendant prior to suit to identify legal arguments involving non-infringement and invalidity; and (6) CDSC's engineers and counsel investigated every contention made by Defendants prior to filing suit.

Under these circumstances, where the patent owner has conducted a careful investigation before commencing litigation, the Federal Circuit has found that the decision to commence patent litigation is reasonable. *See, e.g., Hoffmann-La Roche*, 213 F.3d at 1364-65; ,*Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992). *Compare Eltech Sys. Corp.*, 903 F.2d at 810 (affirming fees and based on patentee's "total failure" to assess

infringement position by conducting proper analysis or testing). Even if this Court believes that CDSC's pre-filing investigation was not ideal, it certainly does not rise to the level of sanctionable conduct under § 285. *Ardisam,* 2005 U.S. Dist. LEXIS 26865, at *4-5 (Crabb, J.) ("Generally, when a full infringement analysis has been conducted, a pre-filing inquiry will be deemed adequate despite other possible deficiencies."), citing *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1381 (Fed. Cir. 2005) *and View Eng'g, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

While Defendants now contend that it is "clear that the claims of the patent do not cover laptop computers, and that all individual peripheral device connections [sic] on the housing [of an accused computer must] also pass through the single connector for connecting to a docking station," they did not think this was so "clear" when the parties discussed infringement of the '645 patent prior to CDSC filing this suit. Specifically, despite lengthy in-person discussions and telephone conversations with many of the defendants prior to filing suit, no defendants ever explained during those discussions any reasons why their products did not infringe based on the "portable computer" or "all connections" limitations. Further, in opposition to CDSC's motion for entry of judgment, Defendants argued that reversal of this Court's construction of "portable computer" or the "all connections" limitation is a significant possibility. CDSC believed in good faith, and still believes that its proposed constructions of these phrases are legally correct. Defendants and this Court disagree, but that does not make this an "exceptional" case.

Defendants further contend, with no evidentiary support whatsoever, that "CDSC's pre-filing investigation was clearly inadequate … [because] [t]o determine infringement of the "same data link" limitation, CDSC would [] need to have obtained knowledge of the circuitry of Defendants' accused products[, and it did not]." But the undisputed evidence demonstrates that CDSC did in fact test the circuitry of Defendants' products. (DePirro Decl. ¶ 4). Further, as this Court has noted before, a patentee is not required to obtain samples of a defendant's products as part of its pre-filing investigation. *Ardisam,* 2005 U.S. Dist. LEXIS 26865, at *5 (Crabb, J.) ("Although the analysis would have been more precise if plaintiffs had obtained samples of the

products, their failure to do so was not 'clearly and convincingly vexatious, unjustified, or frivolous.'") *citing MEMC* 420 F.3d at 1381; *also see DE Techs.,* 2006 U.S. Dist. LEXIS 7553 at *24 (rejecting Dell's argument that DE Tech's failure to reverse engineer the accused subject matter rendered its pre-filing investigation inadequate)[5]; *Frank's Casing & Crew Rental Tools, Inc. v. Weatherford International, Inc.,* 2003 US Dist LEXIS 26146 (W.D. Okla. 2003) (denying §285 motion where plaintiff failed to request defendant provide access to the [accused device] in order to determine its real construction."); *Q-Pharma, Inc. v. The Andrew Jergens Corp.,* 2002 U.S. Dist. LEXIS 27222 (W.D. Wash. 2002) *aff'd* 360 F.3d 1295 (Fed. Cir. 2004) (rejecting argument that pre-filing investigation was inadequate where plaintiff relied on advertising, rather than testing product for the quantity of a claimed ingredient).

### 2.    CDSC's litigation conduct was at all times reasonable.

It is undisputed that up until the Court issued its claim constructions, the parties litigated this case in a cooperative manner. Immediately upon evaluating the Court's claim construction, CDSC informed Defendants that it could no longer maintain its infringement case, and worked toward resolving the case expeditiously and cost-effectively for everyone so that the case could proceed to appeal. When no agreement with Defendants could be reached, CDSC even moved for entry of judgment against itself, which Defendants opposed. Now, in a remarkable contention, Defendants complain that CDSC "unreasonably maintained and expanded the action after the Court issued its claim construction order."

In support of their argument, Defendants claim that "CDSC presented no evidence at all in rebuttal of Defendants' motion for summary judgment." This is factually incorrect. CDSC

---

[5] Notably, in its moving papers, Defendants (including Dell) cite *Judin v. United States*, 110 F.3d 780, 783 (Fed. Cir. 1997), as Dell did in *DE Techs.,* arguing that a patentee's failure to procure and test the accused products renders its pre-filing investigation inadequate. But in *DE Techs.,* the court rejected this same argument from Dell, explaining at great length that a recent Federal Circuit case, *Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295 (Fed. Cir. 2004), distinguished *Judin,* and held that *Judin* does not stand for the proposition that Dell cited it for in *DE Techs.* or here. *DE Techs.,* 2006 U.S. Dist. LEXIS 7553 at *13-28. Dell also fails to cite *Q-Pharma* here.

did provide rebuttal evidence. CDSC responded to each of Defendants' proposed findings of fact, it proposed alternative factual findings, and it provided rebuttal evidence by citing to the declaration of its expert, Dr. Korf.[6] As CDSC stated in its 56(f) motion and opposition to

---

[6] CDSC carefully reviewed this Court's rules relating the filing of summary judgment motions before it filed its opposition to Defendants' motion. In particular, CDSC read the Court's Tips and local rules to require the non-moving party to file three documents- a response to Defendants' proposed factual findings, a brief and evidentiary support, and that a fact was properly put in dispute if the response identified the fact as disputed, set forth the correct fact and identified the support for the proposed fact in the record. This is precisely what CDSC filed as hereinafter reproduced. CDSC further understood that under local rule II(B), CDSC could, but was not required to, submit a separate document proposing its own facts. Reading the Tips and rules together, CDSC did not believe that it was required to file a separate, affirmative proposed fact where that fact was already set forth in its response with an appropriate citation to the record. Even if CDSC's understanding of the rules was wrong, its mistake as to the summary judgment motion does not render the entire case exceptional. *See, e.g.*, Plaintiff's Response to Defendants' Proposed Findings of Fact Re: Summary Judgment, ¶ 73 –

| Paragraph No. | Defendants' Proposed Finding of Fact | Computer Docking Station Corporation's Response |
|---|---|---|
| 73. | Each of the following connections is a peripheral connection that allows a computer to connect to and control one or more external devices: TV-Out, S-Video, RJ-45, RJ-11, an "FDD" connection to an external floppy drive) [sic], a monitor connection (either RGB or VGA, PC Card and/or PCMCIA, ExpressCard, IEEE-1394, USB, infrared (IR), media card reader, headphone, and microphone. Bahr Decl. at ¶4. | Disputed and irrelevant to summary judgment – Each of the following is not a peripheral device specific connector: a RJ-11 port, a PC or PCMCIA card slot, an express card slot, an infrared port, a media card reader, and/or a microphone port. (Korf Decl., ¶¶ 5, 7-11) |

The cited paragraphs of Dr. Korf's declaration state as follows:

5.   An infrared port is not a "connector", as that term is used in the '645 patent, because it does not create a physical connection between a microprocessor and a peripheral device. The main point of using an infrared communication channel between a host and a peripheral device is to allow the peripheral device to communicate with the host device without being physically connected to it. By far the most common example of infrared communication is between a television set and a remote control. The whole point of the remote control is that it is not physically connected to the TV set, even though it communicates with it. Furthermore, one of the points of the '645 patent is to simplify the making and breaking of physical connections between a computer and peripheral devices – communication via an infrared port does not utilize a physical connection between the port and peripheral device.

7.   A microphone is a not a "peripheral device" under this Court's claim construction,

summary judgment, Defendants' unilateral termination of discovery and refusal to provide requested information limited the information available to CDSC, especially in relation to facts concerning infringement of the "all connections limitation."

The only other claim of bad faith litigation conduct made by the Defendants is based on CDSC's supplemental interrogatory responses. When the alleged misconduct relates to the discovery process, the cases under § 285 reserve exceptional case status "for serious breaches." *Instituform of N. Am., Inc. v. Midwest Pipeliners, Inc.*, 26 U.S.P.Q.2d 1125, 1132 (S.D. Ohio 1992). Here, there was no breach at all.

Despite Defendants' argument to the contrary, CDSC did not "add[] additional accused

---

because it is not capable of being controlled by a computer. I disagree with paragraph 15 of Mr. Dennis Bahr's affidavit, where he states that, "A microphone can also be controlled by a computer because the computer controls whether it is accepting and processing input from the microphone". Choosing whether to accept and process input from an external device does not represent control over that device.

8. Similarly, a stereo input source to a computer is not a peripheral device by this definition, because it is not capable of being controlled by the computer.

9. A media card reader is a piece of hardware into which a media card is inserted. In Defendants' computers the media card reader appears to be internal to the computers. The material that Defendants rely upon does not establish that the media card, when inserted in the reader, is external to the computer (i.e., "peripheral"). Therefore, the limited information provided by Defendants fails to establish that media cards are "peripheral devices," and consequently fails to establish that media card readers are "peripheral device specific connectors." Furthermore, the limited information provided by Defendants does not establish whether the media cards are "devices" or are simply storage media like CDs or floppy discs.

10. Similarly, PC card slots, PCMCIA card slots, and Express Card Slots are all ports into which corresponding cards are inserted. In Defendants' computers these card slots appear to be internal to the computers. The material that Defendants rely upon does not establish that the corresponding cards, when inserted in the slots, are external to the computer (i.e., "peripheral"). Therefore, the limited information provided by Defendants fails to establish that these cards are "peripheral devices," and consequently fails to establish that the card slots are "peripheral device specific connectors."

11. The Defendants have failed to establish that an RJ-11 connector is a computer-peripheral-device-specific connector. As reflected in Defendants' materials, an RJ-11 connector is used to connect to a telephone network. The Defendants have failed to establish that a telephone network is a peripheral device. Rather, a telephone network is a communications medium. In most cases a modem, which is used to communicate via the telephone network, is built into the computer. In those cases, the modem is not a peripheral device.

products to the case after the claim construction ruling." Rather, CDSC explicitly "appl[ied] its proposed construction of the claims of the '645 Patent in responding to [Defendants'] Interrogator[ies]," recognizing that it could not assert infringement under the Court's claim construction. *See* Exhibits G, H, and I to Declaration of Edward M. Cannon (Doc. No. 114). CDSC phrased its interrogatory responses in this manner to be clear that it was not accusing any of Defendants' products of infringement under the Court's claim construction relating to "portable," but that it might assert that some of those products met the "all connections" limitation, and that CDSC needed discovery from Defendants on the listed products in order to evaluate that issue. CDSC's interrogatory responses were entirely truthful. Therefore, this could not possibly be a "serious breach" that warrants sanctions under § 285.

### C.      Defendants Have Failed to Present Any Evidence, Let Alone Clear and Convincing Evidence, of Bad Faith Litigation

In the end, Defendants not only ignore the extensive evidence of CDSC's good faith in this case, they fail to introduce any substantial evidence of bad faith litigation, and certainly fail to introduce clear and convincing evidence. Defendants' argument is essentially that they won summary judgment based on the claim construction, and therefore they should be awarded their fees under § 285. While the Court's orders show that the Court ultimately disagreed with CDSC's position on the merits of this lawsuit, they also confirm the existence of close, evolving issues of fact and law. Defendants offer nothing more than a few conclusory allegations about CDSC's conduct that, at worst, suggest that the parties had a few disputes during the litigation. Mere arguments and assertions by counsel do not support a finding of exceptional case status. *See Hoffmann-La Roche*, 213 F.3d at 1366. In short, Defendants' motion falls far short of establishing by clear and convincing that CDSC acted with "bad faith, fraud, gross negligence, or unclean hands" in this litigation. *Ardisam*, 2005 U.S. Dist. LEXIS 26865, at *3 (Crabb, J.). Accordingly, Defendants' motion should be denied. *Id.*

### D.      Defendants Have Failed to State the Amount or Provide a Fair Estimate of the Amount Sought In This Motion As Required By the Federal Rules.

Defendants' motion for attorneys fees is procedurally improper and should be denied on that separate and independent basis.

Fed. R. Civ. P. 54(d)(2)(B) states:

> "Unless otherwise provided by statute or order of the court, the motion [for attorneys' fees] must be filed no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; **and must state the amount or provide a fair estimate of the amount sought....**" (emphasis added).

The judgment in this case was entered January 12, 2007. Defendants' motion for attorneys' fees was filed fourteen days later on January 26, 2007. But nowhere in Defendants' motion do the Defendants "state the amount or provide a fair estimate of the amount sought," as required by Fed. R. Civ. P. 54(d)(2)(B). *Also see* Advisory Committee's Note to 1993 Amendment of Rule 54 ("What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees . . . ."); *Worthington ex rel. J.W. v. Elmore County Bd. of Ed.*, 2006 U.S. Dist. LEXIS 21788, *12-15 (M.D. Alab. April 17, 2006); *DeShiro v. Branch*, 183 F.R.D. 281, 284-85 (M.D. Fla. 1998). Now, the statutory period for providing that amount or fair estimate has passed. As of this moment, over thirty days after the judgment was entered, neither CDSC nor the Court has any idea of the amount of legal fees sought by this motion. This alone is a sufficient basis for denying Defendants' motion for fees. *DeShiro,* 183 F.R.D. at 284-85.

## IV.    CONCLUSION

For the foregoing reasons, CDSC respectfully requests that the Court deny Defendants' motion for a declaration of exceptional case warranting an award of attorneys' fees pursuant to 35 U.S.C. § 285.

DATED:  February 16, 2007

By _____
                          Kevin I. Shenkman

HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Fax:  (213) 694-1234

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I served a true and correct copies of the foregoing document entitled **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY FEES AND TO AMEND JUDGMENT** by e-mail to all counsel of record listed below:

By *M Smith-Richardson*
Miyuki Smith-Richardson

### Service List

**For Defendant Dell, Inc.:**

> James A. Friedman
> Todd G. Smith
> James D. Peterson
> LaFollette Godfrey & Kahn
> One East Main Street, Suite 500
> P.O. Box 2719
> Madison, WI 53701-2719
> Telephone: 608-257-3911
> Fax: 608-257-0609
> jfriedma@gklaw.com
> tsmith@gklaw.com
> jpeterso@gklaw.com

> Brian K. Buss
> Gentry C. McLean
> Willem Schuurman
> David Weaver
> Vinson & Elkins LLP
> 2801 Via Fortuna, Suite 100
> Austin, TX 78746-7568
> Telephone: 512-542-8651
> Fax: 512-236-3476
> bbuss@velaw.com
> gmclean@velaw.com
> dweaver@velaw.com
> bschuurman@velaw.com

**For Defendant Gateway, Inc.:**

Michael J. Modl
Andrew J. Clarkowski
Axley Brynelson
2 East Mifflin Street, Suite 200
P.O. Box 1767
Madison, WI  53701-1767
Telephone:  608-257-5661
Fax:  608-257-5444
mmodl@axley.com
aclarkowski@axley.com

Bryan Farney
Dechert LLP
106 East Sixth Street, Suite 800
Austin, TX  78701
Telephone:  512-394-3000
Fax:  512-394-3001
bryan.farney@dechert.com

Jonathan D. Baker
Dechert LLP
1117 California Avenue
Palo Alto, CA  94304
Telephone: 650-813-4843
Fax: 650-813-4848
jonathan.baker@dechert.com

**For Defendants Toshiba America, Inc. and Toshiba America
Information Systems, Inc.:**

James R. Cole
Anthony A. Tomaselli
Quarles & Brady LLP
One South Pinckney Street
P.O. Box 2113
Madison, WI  53701-2113
Telephone:  608-251-5000
Fax:  608-251-9166
jrc@quarles.com
aat@quarles.com

James B. Bear
Vito A. Canuso III
Edward (Ted) M. Cannon
Knobbe Martens Olson & Bear LLP
2040 Main Street, 14th Floor
Irvine, CA  92614-3641
Telephone:  949-721-2889
Fax: 949-760-9502
vcanuso@kmob.com
tcannon@kmob.com

574343\v2